1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Gerardo Banda, Jr.,                          No. CV-20-0083-TUC-BGM

10                          Petitioner,            **AMENDED ORDER**
                                                   **(Amended as to Warden substitution only)**
11   v.

12   C. Howard, Warden,[1]

13                          Respondent.

14

15        Currently pending before the Court is Petitioner Gerardo Banda, Jr.'s *pro se*

16   Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal

17   Custody ("Petition") (Doc. 1).  Respondent has filed a Return and Answer ("Answer")

18   (Doc. 13).  Petitioner filed a Traverse Reply ("Reply") (Doc. 18).  The Petition is ripe for

19   adjudication.

20

21   **I.      PROCEDURAL BACKGROUND**

22        At the time the Petition (Doc. 1) was filed, Petitioner was incarcerated at the

23   United States Penitentiary in Tucson, Arizona ("USP–Tucson"), but he is now on home

24   confinement.   *See* Petition (Doc. 1); Notice (Doc. 26).  Bureau of Prisons ("BOP")

25

26        [1] The Court takes judicial notice that B. Von Blanckensee is no longer warden of USP–
     Tucson.  As such, the Court will substitute the new Complex Warden at the Federal Correctional
27   Complex in Tucson, Arizona, which includes USP–Tucson.  Accordingly, Warden C. Howard is
     substituted as the sole Respondent pursuant to Rule 25(d) of the Federal Rules of Civil
28   Procedure.

records, however, show that Petitioner was released from custody on October 9, 2020. *See* Fed. BOP Inmate Locater, https://www.bop.gov/inmateloc/ (last visited March 30, 2021). Petitioner is serving a sentence for Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1)(A)(2). *See* Response (Doc. 13) Tempski Decl. (Exh. "A"), Inmate Data (Attach. "1") at 6.[2] On February 26, 2020, Petitioner filed a Petitioner Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody. *See* Petition (Doc. 1). Petitioner challenges a disciplinary conviction that resulted in his loss of good time credits. *See id.* Petitioner alleges that due process violations during the disciplinary process resulted in the disallowance of forty-one (41) days of good time credits. *See id.* Petitioner requests this Court order Respondent to expunge the disciplinary violations and return the forty-one (41) days of good time credits. *See id.*

## II.    FACTUAL BACKGROUND

On October 23, 2018 at approximately 9:30 a.m., Senior Officer ("SO") J. Peraza conducted a random cell search in D-1 cell 228 and found "an inmate wrist watch with an altered bottom cap." Response (Doc. 13), Bennett Decl. (Exh. "B"), Incident Report No. 3183853 (Attach. "1") (Doc. 13-3) at 6. SO Peraza reported that "[t]he watch was found inside of Inmate Banda, Gerardo # 03033-379['s] secured locker." *Id.* SO Peraza further reported that "[u]pon removing the wrist watch cap[,] [he] found (3) three orange strips inside the watch." *Id.* Subsequently, "[t]he orange strips were taken to the Lieutenants [sic] office and [Special Investigative Support ("SIS")] tested the orange strips utilizing NIK tests A, U and K." *Id.* The strips tested positive for Opium Alkaloids. *Id.*

Petitioner was charged with the prohibited act of Possession of any drugs and/or alcohol in violation of Code 113. Response (Doc. 13), Bennett Decl. (Exh. "B"), Incident Report No. 3183853 (Attach. "1") (Doc. 13-3) at 6. Later the same day, Activities

---

[2] Page citations refer to the Case Management/Electronic Case Files ("CM/ECF") page number for ease of reference.

1    Lieutenant R. Sanchez delivered the incident report to Petitioner.  *Id*.  Lt. Sanchez also
2    investigated the incident and advised Petitioner of his rights.  Response (Doc. 13), Exh.
3    "B," Attach. "1" at 7.  During Act. Lt. Sanchez's investigation, Petitioner displayed a fair
4    attitude and stated, "No Comment."  *Id*.  Petitioner did not request a staff representative.
5    *Id*.  Act. Lt. Sanchez forwarded the Incident Report to the Unit Discipline Committee
6    ("UDC") for further disposition.  *Id*.

7         On October 30, 2018, the UDC conducted its hearing.  Response (Doc. 13),
8    Bennett Decl. (Exh. "B"), Incident Report No. 3183853 (Attach. "1") (Doc. 13-3) at 6.
9    Petitioner stated, "Not guilty."  *Id*.  Based on the severity of the alleged misconduct, the
10   UDC referred the matter to the Discipline Hearing Officer ("DHO") for final disposition,
11   and if Petitioner was found guilty, recommended a loss of good conduct time,
12   disciplinary segregation, and a loss of privileges.  *Id*.  On the same date, Petitioner was
13   provided with a Notice of Discipline Hearing Before the (DHO) and his rights at that
14   hearing.  Response (Doc. 13), Exh. "B," Attach. "3" & Attach. "4").  Petitioner indicated
15   that he did not wish to have a staff representative at his DHO hearing or call any
16   witnesses.  *Id*., Exh. "B," Attach. "3" at 13.

17        On November 8, 2018, Petitioner had a DHO hearing before DHO W. Bennett.
18   *See* Response (Doc. 13), Bennett Decl. (Exh. "A"), DHO Rpt. (Amended) (Attach. "5")
19   (Doc. 13-3).  DHO Bennett considered the supporting memoranda submitted from SIS
20   Tech. Cristinzio and Chief Pharmacist Yeh dated October 23, 2018; supporting Chain of
21   Custody Form Specimen ID BOP00003445960 dated October 23, 2018; and supporting
22   photographs taken by Officer Sanchez dated October 23, 2018.  *Id*., Exh. "B," Attach.
23   "5" at 17.  Based on the SO Peraza's written statement and the documentary evidence and
24   photographs, DHO Bennett determined that the evidence "support[ed] the fact
25   [Petitioner] w[as] engaged in the illegal possession of narcotics and/or drugs.  *Id*., Exh.
26   "B," Attach. "5" at 18.  DHO Bennett imposed sanctions totaling forty-one (41) days
27   Disallowance of Good Conduct Time, thirty (30) days Disciplinary Segregation, one (1)
28   year lost phone privileges, and two (2) years lost visitation.  *Id*.  On December 12, 2018,

1    DHO Bennett signed the DHO report and it was delivered to Petitioner on December 14,
2    2018.  Response (Doc. 13), Bennett Decl. (Exh. "B"), DHO Rpt. (Attach. "2") at 11.  On
3    July 22, 2019, DHO Bennett signed an amended DHO Report, correcting a sentence in
4    her Section V narrative where she referenced the incorrect inmate.  Response (Doc. 13),
5    Exh. "B" at ¶ 7; *compare* DHO Rpt. (Attach. "2") with DHO Rpt. (Amended) (Attach.
6    "5").

7

8    **III.   ANALYSIS**

9        ***A.      Jurisdiction—In General***

10       "Federal courts are always 'under an independent obligation to examine their own
11   jurisdiction,' . . . and a federal court may not entertain an action over which it has no
12   jurisdiction."  *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (quoting
13   *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).  "Habeas corpus proceedings
14   are the proper mechanism for a prisoner to challenge the 'legality or duration' of
15   confinement."  *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) (citing *Preiser v.
16   Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973)).
17   "Generally, motions to contest the legality of a sentence must be filed under § 2255 in the
18   sentencing court, while petitions that challenge the manner, location, or conditions of a
19   sentence's execution must be brought pursuant to § 2241 in the custodial court."
20   *Hernandez*, 204 F.3d at 864.  Therefore, before proceeding to any other issue a court
21   must establish whether a habeas petition is filed pursuant to § 2241 or § 2255 to
22   determine whether jurisdiction is proper. *Id.* at 865.

23       Here, Petitioner does not claim that the sentencing court imposed an illegal
24   sentence; rather he seeks relief with respect to disciplinary proceedings while
25   incarcerated at a federal facility.  As such, Petitioner is challenging the manner, location,
26   or condition of the execution of his sentence.  *See e.g., Rogers v. United States*, 180 F.3d
27   349 (1st Cir. 1999) (Section 2241 petition is appropriate vehicle to challenge the
28   correctness of a jail-time credit determination, once administrative remedies have been

exhausted); *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc), ("[c]hallenges to the validity of any confinement or to the particulars affecting its duration are the province of habeas corpus[.]" (quoting *Muhammad v. Close*, 540 U.S. 749, 750, 124 S. Ct. 1303, 158 L.Ed.2d 32 (2004)); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991) (a prisoner's challenge to the "manner in which his sentence was executed . . . [is] maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241"). Such a challenge must be brought pursuant to § 2241 in the custodial court. At the time of filing the Petition, Petitioner was incarcerated at USP – Tucson in Arizona. Accordingly, this Court has jurisdiction over this matter. *Francis v. Rison*, 894 F.2d 353 (9th Cir. 1990).

### B.   *Exhaustion*

#### 1.   In General

The Ninth Circuit Court of Appeals has stated:

> [28 U.S.C. § 2241] does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus. [Footnote omitted.] However, we require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241.

*Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S. Ct. 2422, 165 L. Ed. 2d 323 (2006). "The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement." *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54–55, 115 S. Ct. 2021, 2023–24, 132 L. Ed. 2d 46 (1995). "Nevertheless, '[p]rudential limits like jurisdictional limits and limits on venue, are ordinarily not optional.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (alterations in original) (quoting *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S. Ct. 2422, 165 L.Ed.2d 323 (2006)).

"Courts may require prudential exhaustion if '(1) agency expertise makes agency

consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Id.* (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)).   "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citations omitted).   Exhaustion may be excused if pursuing an administrative remedy would be futile.  *Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993).

If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim.  *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994) (citing *Francis, Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986)).   If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation.  *See Francis*, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); *Murray v. Carrier*, 477 U.S. 478, 492, 106 S. Ct. 2639, 2647–48, 91 L. Ed. 2d 397 (1986) (cause and prejudice test applied to procedural defaults on appeal); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 906–08 (9th Cir. 1986) (cause and prejudice test applied to *pro se* litigants).

**2.  BOP Administrative Procedures**

The BOP has established an administrative remedy process permitting an inmate to seek review of an issue relating to "any aspect of his/her own confinement."  28 C.F.R. § 542.10(a).   Under that process, an inmate seeking to appeal a DHO decision shall submit the appeal "initially to the Regional Director for the region where the inmate is currently located."  28 C.F.R. § 542.14(d)(2).   "An inmate who is not satisfied with the

1    Regional Director's response may submit an Appeal on the appropriate form (BP-11) to

2    the General Counsel within 30 calendar days of the date the Regional Director signed the

3    response."  28 C.F.R. § 542.15(a).  The deadlines contained within this process may be

4    extended upon request by the inmate and a showing of a valid reason for delay.  28

5    C.F.R. § 542.15(a); 28 C.F.R. § 542.14(b).  An appeal is considered filed on the date it is

6    logged in the Administrative Remedy Index as received.  28 C.F.R. § 542.18.  Once an

7    appeal is filed, a Regional Director shall respond within 30 days; General Counsel shall

8    respond within 40 calendar days.  *Id.*  "If the inmate does not receive a response within

9    the time allotted for reply, including extension, the inmate may consider the absence of a

10   response to be a denial at that level."  *Id.*

### 3.  Exhaustion in the Instant Case

12        Here, Respondent did not comment regarding Petitioner's exhaustion of his

13   administrative remedies and the record does not contain any information regarding

14   Petitioner's administrative appeal of Incident Report No. 3183853.  The Ninth Circuit

15   Court of Appeals, however, has recognized that:

> [T]he requirement of exhaustion of remedies [is to] aid judicial review by
> allowing the appropriate development of a factual record in an expert
> forum; conserve the court's time because of the possibility that the relief
> applied for may be granted at the administrative level; and allow the
> administrative agency an opportunity to correct errors occurring in the
> course of administrative proceedings.

*Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983).  In this case, Petitioner alleges

22   questions regarding photographic evidence, a reference to Prohibited Act Code 111, not

23   Code 113 that Petitioner was charged with, and the identity of the officer who provided

24   him the copy of the Incident Report.  *See* Reply (Doc. 18).  The Court finds these issues

25   could have been resolved with proper development of the factual record through the

26   administrative appeals process.  Accordingly, the Court finds Petitioner's claims are not

27   exhausted.

28   . . .

- 7 -

**B.     Mootness**

"Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L.Ed.2d 391 (1994).  "The jurisdiction of federal courts is defined and limited by Article III of the Constitution." *Flast v. Cohen*, 392 U.S. 83, 94, 88 S. Ct. 1942, 1949, 20 L. Ed. 947 (1968).  Further, the judicial power of this and all federal courts is limited to actual cases or controversies. U.S. Const. art. III; *see also, Flast v. Cohen*, 392 U.S. 83, 94–95, 88 S. Ct. 1942, 1949–50, 20 L. Ed. 2d 947 (1968).   "In general a case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S. Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396, 100 S. Ct. 1202, 1208, 63 L.Ed.2d 479 (1980)).  "Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole— some 'collateral consequence' of the conviction—must exist if the suit is to be maintained." *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S. Ct. 978, 983, 140 L. Ed. 2d 43 (1998) (citations omitted).  The effect that this sentence may have on future sentences is not a sufficient injury for standing.  *Lane v. Williams*, 455 U.S. 624, 633 n.13, 102 S. Ct. 1322, 1328 n.13, 71 L. Ed. 2d 508 (1982) ("parole violations that remain a part of respondents' records cannot affect a subsequent parole determination unless respondents again violate state law, are returned to prison, and become eligible for parole. Respondents themselves are able – and indeed required by law – to prevent such a possibility from occurring."); *see also United States v. Palomba*, 182 F.3d 1121, 1123 (9th Cir. 1999).

"[T]he function of the writ [of habeas corpus] is to secure immediate release from illegal physical custody."  *Picrin-Peron v. Rison*, 930 F.2d 773, 775 (9th Cir. 1991) (citations omitted).  "The Supreme Court has held that 'under the writ of *habeas corpus* we cannot do anything else than discharge the prisoner from the wrongful confinement.'" *Id.* (quoting *Ex parte Medley*, 134 U.S. 160, 173, 10 S. Ct. 384, 388, 33 L. Ed. 835

(1890)) (emphasis in original).  Where a habeas petitioner is not challenging the validity of his underlying conviction, but rather the location or condition of his confinement, release from custody moots the habeas petition.  *Munoz v. Rowland*, 104 F.3d 1096 (9th Cir. 1997) (finding § 2241 petition challenging conditions of confinement moot because petitioner had been paroled, thus, relief sought was unavailable); *Picrin-Peron* (dismissing § 2241 petition because petitioner had been granted immigration parole and released from custody).

Here, Petitioner was released from federal custody on October 9, 2020.  *See* Fed. Bureau of Prisons ("BOP") Inmate Locater, https://www.bop.gov/inmateloc/ (last visited March 30, 2021).  In his habeas petition, Petitioner sought restoration of his good conduct time due to alleged violations in a disciplinary proceeding.  In light of Petitioner's release, this Court cannot provide him with the relief sought.  Moreover, there is no expectation that Petitioner will again be subjected to this same set of circumstances, and as such, "[t]his is not a situation 'capable of repetition, yet evading review" to which the doctrine of mootness may not apply."  *Reimers v. Oregon*, 863 F.2d 630, 632 (9th Cir. 1988) (quoting *Cox v. McCarthy*, 829 F.2d 800, 803 (9th Cir. 1987)).  Accordingly, Petitioner's claims are moot, and his petition should be dismissed.  *Munoz*, 104 F.3d at 1098.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

**IV.    CONCLUSION**

Based on the foregoing, the Court finds that Petitioner's Petition (Doc. 1) is now moot and should be dismissed.  Accordingly, IT IS HEREBY ORDERED that:

(1)    C. Howard, Warden, is SUBSTITUTED as the sole Respondent, replacing B. Von Blanckensee pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and Rule 43(c)(2) of the Federal Rules of Appellate Procedure; and

(2)    Petitioner's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 1) is DISMISSED;

(3)    All pending motions are DENIED AS MOOT; and

(4)    The Clerk of the Court shall enter judgment and close its file in this matter.

Dated this 31st day of March, 2021.

Honorable Bruce G. Macdonald
United States Magistrate Judge